[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action asking that the marriage be dissolved. All jurisdictional requirements for its maintenance have been met.
The parties intermarried on November 25, 1976 in Milford, Connecticut. Both had been married before and each party had children by those former marriages. The defendant lived in a house at 121 Corona Drive in Milford with his children. The plaintiff moved in with her children. In the beginning the marriage apparently was a happy one. The plaintiff acted as the homemaker and the defendant was fully occupied with his brothers in a CT Page 6004 building and construction business known as Collucci Brothers, Inc. and in a real estate investment business known as CAP Associates, a partnership. Prior to the marriage the plaintiff had been employed as a waitress but at that time of the marriage was on welfare. The defendant did not know she was on welfare and did not learn about that until he found a welfare check in their mailbox. The defendant then told the plaintiff that it was not right for him as a businessman to have his wife on welfare. She did stop the welfare checks as he wanted but had gotten them for a year and a half after the marriage. This matter came up again later in the trial. At that time the plaintiff first testified that she gave the welfare checks to the defendant and then testified that she cashed them and gave the defendant the money.
On August 2, 1985 the plaintiff filed a suit against the defendant asking that their marriage be dissolved. It was withdrawn on September 3, 1987 as the result of an agreement between the parties. In the agreement the plaintiff promised to stop seeing friends who lived in Norwalk and to stop working. The defendant promised that he would stop going out on Friday nights with his men friends, that he would have the house at 121 Corona Drive remodeled and that he would put the plaintiff's name on the property which was then in the defendant's name only. He did not change the title to the property as he claimed the plaintiff did not live up to what she had promised him. He did stay in Friday nights and did not have the house remodeled.
Thereafter the gun incident occurred. This matter was of great importance to both parties and it was discussed at length three times during the trial.
The defendant had two guns — a .22 rifle and a BB gun. They were not kept in the house. On the evening of November 6, 1989, the defendant was lying in his bed in his bedroom watching the Monday night football game on the TV set. The plaintiff came into the bedroom. At this point the facts are different depending on who is relating them. The plaintiff testified that she was holding the guns, one in each hand. The guns were held vertically, pointing up, her hands about 4 inches below the muzzle of the gun. She testified the guns were not loaded and she did not point them at the defendant. She said — don't worry I'm not going to shoot you — and left. The defendant testified that she was carrying one gun and that it was pointed at him. The plaintiff's daughter was in the house and heard the defendant say — don't point that gun at me. The defendant also testified that he said the same words to the plaintiff. He kept the guns unloaded with the bullets in his room. He could not know whether or not the plaintiff had found the bullets and loaded the gun.
The defendant testified that his heart was pounding. After the CT Page 6005 plaintiff left he sat on the edge of his bed until he composed himself, left the house, checked into a motel, came back early the next morning to shave and get some clothes, left and has not returned to the house since.
The court finds that the plaintiff had one gun, and that she pointed it at the defendant in a threatening manner. The court believes that this incident occurred because the plaintiff wanted the defendant out of the house. It was successful from her point of view as it drove the defendant from the house.
The plaintiff testified that the marriage had broken down irretrievably with no hope for reconciliation. She did not give any reason why she thought it had broken down. The court notes that she hired a private detective to follow and watch the defendant. Apparently he did not uncover anything the plaintiff could use against the defendant.
The defendant also testified that the marriage had broken down irretrievably. He said that the defendant was the cause of the breakdown. He said that he had been good to the plaintiff and had given her money when she wanted it, that he had given the plaintiff's children cars when they wanted them, that he had arranged for braces for the teeth of one of the children, that he had given the plaintiff's daughter Shay money for her divorce and helped pay for the wedding of the plaintiff's daughter Michelle. He said that the final straw was to find the detective following him.
In 1989 after Michelle's wedding, the plaintiff told the defendant that at this time she had done everything expected of her, that she had finished her obligations and that she didn't care about the future.
The court finds that the plaintiff was the cause of the breakdown of the marriage. It might have been viable before the gun incident but it was not afterwards. The defendant was served with the papers in this action on December 27, 1989.
The marriage is dissolved.
The plaintiff shall vacate the marital home at 121 Corona Drive in Milford within 60 days from the date of this Memorandum of Decision and take the possessions brought with her into the marriage from the house. Any damages caused to the house or its contents by the defendant, or by anyone acting for her, shall be viewed with great concern by the court and shall be subject to any appropriate orders.
The plaintiff is awarded $25,000 in lump sum alimony at this time plus periodic alimony in the amount of $250. a week for seven CT Page 6006 years.
The defendant shall pay $10,000 (in addition to the $5000 already paid) towards the fees of the plaintiff's attorney.
The plaintiff shall be entitled to remain as an insured under the medical insurance policy available to the defendant by reason of his business association for as long as she is entitled to be covered under applicable law but at her own expense.
The defendant shall provide for the plaintiff a four door automobile of the plaintiff's choosing at his expense but not to exceed $10,000 plus sales tax.
The plaintiff may resume her maiden name of Marilynn J. Brady.
THOMAS J. O'SULLIVAN, TRIAL REFEREE